1

2

3

4

5

6

7

FILED
CLERK, U.S. DISTRICT COURT

7/23/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____MMC_____ DEPUTY

8              UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10               June 2024 Grand Jury

11   UNITED STATES OF AMERICA,          CR No. 2:24-CR-00448-RGK

12          Plaintiff,                  I N D I C T M E N T

13          v.                          [21 U.S.C. § 846: Conspiracy to
                                        Distribute Methamphetamine; 21
14   MANUEL BOLANOS AYONA and           U.S.C. § 963: Conspiracy to Export
     GUANRONG CHEN,                     Methamphetamine; 21 U.S.C. §§ 853
15                                       and 970: Criminal Forfeiture]
            Defendants.
16

17       The Grand Jury charges:

18                      COUNT ONE

19                  [21 U.S.C. § 846]

20                  [ALL DEFENDANTS]

21   A.   OBJECT OF THE CONSPIRACY

22       Beginning in or about October 2023, and continuing until July

23   10, 2024, in Los Angeles and San Bernardino Counties, within the

24   Central District of California, and elsewhere, defendants MANUEL

25   BOLANOS AYONA and GUANRONG CHEN conspired with one another and with

26   others known and unknown to the Grand Jury to knowingly and

27   intentionally distribute at least 50 grams of methamphetamine, a

28

1  Schedule II controlled substance, in violation of Title 21, United

2  States Code, Sections 841(a)(1) and (b)(1)(A)(viii).

3  B.    MANNER AND MEANS OF THE CONSPIRACY

4      The object of the conspiracy was to be accomplished, in

5  substance, as follows:

6      1.    Defendant BOLANOS would identify potential buyers and

7  sellers of large quantities of methamphetamine in the United States.

8      2.    Defendant BOLANOS would arrange for potential buyers and

9  suppliers of large quantities of methamphetamine to meet.

10      3.    Defendant BOLANOS would remain in contact with both the

11  methamphetamine buyer and the seller before, during, and after the

12  meeting in order to facilitate their drug trafficking.

13      4.    Defendant CHEN, accompanied by a coconspirator (CC-1),

14  would meet with the seller of methamphetamine and discuss the amount

15  of methamphetamine to be purchased, the price per kilogram, the

16  method of shipment to Sydney, Australia, the date and time of the

17  meeting in Sydney, Australia to conduct the delivery of

18  methamphetamine, and the methods of transfer of funds for the

19  purchase of the methamphetamine.

20      5.    CC-1 would travel to Sydney, Australia to retrieve

21  methamphetamine exported from the United States to Australia, from

22  locations in Australia.

23      6.    Defendant CHEN would deliver half of the purchase price of

24  the methamphetamine to the seller in Los Angeles, California in the

25  form of U.S. currency and would arrange to have the other half of the

26  purchase price of the methamphetamine in cryptocurrency transferred

27  to the seller via a cryptocurrency wallet.

28

C.    OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendants BOLANOS and CHEN, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including but not limited to, the following:

1.    On October 17, 2023, in West Covina, California, during a meeting, defendant BOLANOS and an undercover law enforcement agent posing as a seller of large quantities of methamphetamine on behalf of a Mexican drug cartel ("UC-1"), discussed a future meeting with individuals known to defendant BOLANOS who wished to have a large quantity of methamphetamine shipped to Australia for resale.

2.    On February 6, 2024, in West Covina, California, during a meeting, defendant BOLANOS told UC-1 that a Chinese national he referred to as a "big boss" was ready to commit to an order of 150 to 250 kilograms of methamphetamine to be shipped to Australia as soon as possible and that the customer was willing to pay $28,000 to $35,000 per kilogram.

3.    On May 7, 2024, in West Covina, California, during a meeting, defendant CHEN and a coconspirator known to the Grand Jury ("CC-1") told UC1 that they would take delivery of 200 kilograms of methamphetamine in Sydney, Australia and that they were willing to pay $25,000 to $30,000 per kilogram.

4.    On May 16, 2024, in Montclair, California, during a meeting, defendant CHEN and CC-1 advised UC1 that when the methamphetamine was delivered to them in Australia they would simultaneously pay half the purchase price for the methamphetamine to UC1 in U.S. currency and the other half in cryptocurrency.

5.    On May 16, 2024, in Montclair, California, during a meeting, defendant CHEN and CC-1 viewed 200 kilograms of methamphetamine shown to them by UC1 as a demonstration of the availability of the methamphetamine for purchase.

6.    On June 7, 2024, in Montclair, California, during a meeting, CC-1 delivered approximately $40,000 in U.S. currency to UC1 as part of a $50,000 deposit on the shipment of 250 kilograms of methamphetamine to Australia, and told UC1 that his partner, defendant CHEN, would deliver the other $10,000.

7.    On June 13, 2024, in Montclair, California, during a meeting, defendant CHEN delivered approximately $9,950 in U.S. currency to UC1 as the remainder of the $50,000 deposit.

8.    On June 24, 2024, in Montclair, California, during a meeting, defendant CHEN gave $50 in U.S. currency to UC1 to cover the amount missing from the June 13, 2024 delivery, and agreed to meet on July 9, 2024 in West Covina, California to deliver $3,000,000 in U.S. currency to a second undercover law enforcement agent ("UC2") as partial payment for the shipment of 250 kilograms of methamphetamine to Australia.

4

COUNT TWO

[21 U.S.C. § 963]

[ALL DEFENDANTS]

A.    OBJECTS OF THE CONSPIRACY

Beginning in or about October 2023, and continuing until July 10, 2024, in Los Angeles and San Bernardino Counties, within the Central District of California, and elsewhere, defendants MANUEL BOLANOS AYONA and GUANRONG CHEN conspired with one another and with others known and unknown to the Grand Jury to knowingly and intentionally export from the United States at least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 960(a)(1), (b)(1)(H).

B.    MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished, in substance, through the means set forth in Section B, Paragraphs 1 through 6, of Count One of the Indictment, which are re-alleged and incorporated here.

C.    OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendants BOLANOS and CHEN, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, in the country of Australia, and elsewhere, including, but not limited to, Overt Acts 1-8, as set forth in Count One of this Indictment, which are re-alleged and incorporated here.

FORFEITURE ALLEGATION ONE

[21 U.S.C. § 853]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853, in the event of any defendant's conviction of the offenses set forth in Count One of this Indictment.

2.    Any defendant so convicted, shall forfeit to the United States of America the following:

(a)    All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which said defendant obtained, directly or indirectly, from such offense;

(b)    All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such offense; and

(c)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), any defendant so convicted, shall forfeit substitute property if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[21 U.S.C. §§ 853 and 970]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Sections 853 and 970, in the event of any defendant's conviction of the offense set forth in Count Two of this Indictment.

2.    The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)  All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from such offense;

(b)  All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such offense; and

(c)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), the defendant, if so convicted, shall forfeit substitute property if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished

1  in value; or (e) has been commingled with other property that cannot

2  be divided without difficulty.

3                                        A TRUE BILL

4

5                                        /s/

   Foreperson

6

7  E. MARTIN ESTRADA
   United States Attorney

8

9

10 MACK E. JENKINS
   Assistant United States Attorney
11 Chief, Criminal Division

12 J. MARK CHILDS
   Assistant United States Attorney
13 Chief, International Narcotics,
   Money Laundering, and
14 Racketeering Section

15 BRITTNEY M. HARRIS
   Assistant United States Attorney
16 Deputy Chief, International
   Narcotics, Money Laundering, and
17 Racketeering Section

18 JULIE J. SHEMITZ
   Assistant United States Attorney
19 International Narcotics, Money
   Laundering, and Racketeering
20 Section

21

22

23

24

25

26

27

28

                                        2